718 So.2d 1003 (1998)
Lottie HARRISON, Plaintiff-Appellant,
v.
FRANK AND JANIE SEAFOOD RESTAURANT, Defendant-Appellee.
No. 30845-WCA.
Court of Appeal of Louisiana, Second Circuit.
August 19, 1998.
*1004 Tracy L. Short, James M. Wilkerson, Farmerville, for Plaintiff-Appellant.
Crawford & Anzelmo by Donald J. Anzelmo and Neal Johnson, Monroe, for Defendant-Appellee.
Before MARVIN, STEWART and CARAWAY, JJ.
STEWART, Judge.
This matter involves a claim for worker's compensation benefits, medical expenses, penalties and attorney fees. It is undisputed that the claimant, Ms. Lottie Harrison, injured her right shoulder while working as a waitress for the defendant, Frank and Janie's Seafood Restaurant. This matter was tried before the Honorable Brenza Irving, Hearing Officer for the Office of Worker's Compensation, State of Louisiana, on June 11, 1997. The Hearing officer entered a judgment in favor of the claimant and against the defendant, awarding the claimant statutory penalties in the amount of $500.00 and attorney fees in the amount of $500.00, finding that the defendant had acted unreasonably by delaying the authorization of Ms. Harrison's medical treatment on two separate occasions. The hearing officer determined that Ms. Harrison was not entitled to supplemental earnings benefits (SEB) because Ms. Harrison was able to work as a bartender. We amend in part and as amended affirm.

FACTS
It is undisputed that the claimant, Ms. Lottie Harrison, injured her right shoulder while working as a waitress for the defendant, Frank and Janie's Seafood Restaurant (defendant), on July 16, 1994. The following day Ms. Harrison was treated at North Monroe Hospital by emergency room physician, Dr. Clinton Guillroy. Ms. Harrison was ordered to wear an arm sling for several days and pain medication was prescribed. She was prevented from working for several days.
Furthermore, it is undisputed that after the incident, Ms. Harrison continued to work as a waitress for the defendant until mid-January 1995. When she returned to work Ms. Harrison required the help of other waitresses. *1005 Ms. Harrison also worked as a bartender at a local lounge during her days off, serving drinks and making change.
On August 11, 1994, Ms. Harrison went to the emergency room due to the extreme pain in her shoulder. Dr. Guillroy ordered Ms. Harrison to wear an arm sling for several days, prescribed pain medication and referred her to an orthopaedic surgeon at North Monroe Hospital. The following day, August 12, 1994, Ms. Harrison was examined by Dr. James Jeffrey at the Monroe Medical Clinic. Dr. Jeffrey diagnosed Ms. Harrison with a rotator cuff injury, referred her to Dr. Douglas Brown, an orthopaedic surgeon and ordered her not to work until released by Dr. Brown. On August 16, 1994, Dr. Brown began treating Ms. Harrison. Dr. Brown diagnosed Ms. Harrison with a rotator cuff injury, prescribed pain medication, anti-inflammatory medications, and physical therapy two times per week, for four weeks.
In January 1995 Ms. Harrison was terminated from Frank & Janie's. Ms. Harrison stopped seeing Dr. Brown because she did not know that her employer was responsible for her medical expenses after her termination. Unable to work as a waitress because of shoulder pain, Ms. Harrison began working as a bartender at the 2 Rules II Lounge in February 1995.
On September 21, 1995, Ms. Harrison returned to Dr. Brown. Dr. Brown recommended surgery to correct her rotator cuff. Ms. Harrison's surgery was not approved by the defendant's insurer until July 26, 1996, ten months after the request was made. On July 26, 1996, Dr. Brown performed arthroscopic surgery on Ms. Harrison's shoulder. After the surgery, Ms. Harrison began receiving weekly benefits. Then on December 5, 1996, he performed a right shoulder manipulation under anesthesia, on an outpatient basis. On March 7, 1997, Ms. Harrison was released by Dr. Brown to return to work that did not require her to raise her arm above her head.
Ms. Harrison filed a disputed claim for Compensation with the Office of Worker's Compensation Administration, alleging entitlement to back-due compensation benefits in July 1995. By supplemental petition, filed on April 26, 1996, Ms. Harrison requested penalties and attorney fees pursuant to La. R.S. 23:1201, arising out of the defendant's arbitrary and capricious refusal to provide compensation payments and medical benefits.
This matter was tried before the Honorable Brenza Irving, Hearing Officer for the Office of Worker's Compensation, State of Louisiana, on June 11, 1997. The hearing officer found that the defendant had acted unreasonably by delaying the authorization of Ms. Harrison's medical treatment on two separate occasions, categorized all of Ms. Harrison's earnings as "other wages" and found that her average weekly wage (AWW) was $141.87, with a corresponding compensation rate of $94.58. The hearing officer determined that Ms. Harrison was not entitled to supplemental earnings benefits (SEB) because Ms. Harrison was able to work as a bartender. On August 14, 1997, a judgment was rendered in favor of the claimant, Ms. Harrison, awarding statutory penalties in the amount of $500.00 and attorney fees in the amount of $500.00 for an unreasonable delay in the approval of the shoulder surgery recommended by Dr. Brown. The claimant, Ms. Harrison, now appeals the judgment urging four assignments of error.

STATUTORY PENALTIES
In assignment of error number one, the claimant, Ms. Harrison urges that the hearing officer erred in failing to award her the proper amount of statutory penalties in view of the fact that the hearing officer found the defendant was arbitrary and capricious by unreasonably delaying authorization of medical treatment for Ms. Harrison.
Ms. Harrison further urges that the issue is whether the Hearing officer may disregard the statutory calculations of penalties, once it is determined that penalties are due, and award penalties inconsistent with the statute. La. R.S. 23:1201 provides for penalties of an amount equal to 12 percent of any unpaid compensation or medical benefits or $50 per calendar day for each day in which any medical benefits owed remained unpaid, whichever is greater, but not to exceed two thousand dollars in the aggregate. Once the *1006 hearing officer has exercised her discretion and determined that the employer has acted arbitrarily and capriciously by unreasonably delaying medical treatment, sufficient to warrant the imposition of penalties and attorney fees under the statute, then the hearing officer must award penalties in accordance with the statute; she has no discretion in that regard. Williams v. Hospital Service, Inc., 95-214 (La.App. 5 Cir. 9/20/95), 663 So.2d 749, 754, writ denied 96-0160 (La.3/15/96), 669 So.2d 422.
The defendant argues that the hearing officer found that at least some portion of the delay between recommendation of surgery and approval of surgery was reasonable and noted that several reasonable steps were made by the defendant before deciding to approve the surgery.
The defendant further argues that the penalties are justifiably below the maximum and actually reflect a reasonable penalty for the number of days which the court found to have been unreasonable and that the award dealt with only a small portion of the many issues involved in this litigation. Determinations concerning penalties and attorney's fees are essentially questions of fact, and the trial court's findings should not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Company, Inc., 618 So.2d 646 (La.App. 2d Cir.1993); McKenzie v. City of Bossier, 585 So.2d 1229 (La.App. 2d Cir.1991).
The hearing officer's factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.1/14/94), 630 So.2d 706; Mitchell v. AT & T, 27,290 (La.App. 2d Cir.8/28/95), 660 So.2d 204, writ denied, 95-2474 (La. 12/15/95), 664 So.2d 456. Under the manifest error rule, the reviewing court does not decide whether the factual findings are right or wrong, but whether they are reasonable. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra. An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless the finding is clearly wrong. Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Lebeaux v. Newman Ford, Inc., 28,609 (La.App. 2 Cir. 9/25/96), 680 So.2d 1291.
The hearing officer considered Ms. Harrison's entitlement to penalties and attorney fees due to the defendant's failure to pay compensation benefits until her surgery was performed by Dr. Brown and found no basis for this claim. Therefore, the hearing officer awarded penalties and attorney fees only on the basis of the defendant's failure to approve the arthroscopic shoulder surgery on a timely basis.
The record reveals that Dr. Brown recommended the surgery on September 21, 1995. Tina Maurer (Maurer), the adjuster for the third party administrator for defendant, testified that she first learned of the recommendation for surgery in October 1995. Maurer further testified that she was concerned because the claimant had not seen a physician between November 17, 1994 and September 21, 1995 and that she considered a second opinion before approving the surgery. However, instead of a second opinion, the claimant's deposition was held on December 6, 1995, two months after the defendant learned of Dr. Brown's recommendation for surgery.
On January 9, 1996, the defendant sent a letter to Dr. Brown to request clarification about the need for surgery. Dr. Brown responded to the request on February 7, 1996. On March 26, 1996, Maurer faxed a letter to Dr. Brown approving the surgery. The surgery was performed July 1996.
The hearing officer found two separate periods which constituted an unreasonable delay. The first unreasonable delay was found to be the period between the defendant's knowledge of the recommended surgery and the scheduling of the deposition, October 1995 through December 6, 1995. The second unreasonable delay was found to be the period between the claimant's deposition and the surgery approval, December 6, 1995 through March 26,1996.
*1007 The record supports the finding that the defendant acted arbitrarily and capriciously in unreasonable delaying approval of the recommended surgery for approximately eightyfour (84) days. Therefore, the defendant was properly assessed penalties for this arbitrary and capricious conduct. However, the penalties should have been set, as per La. R.S. 23:1201(F), in the amount of twelve percent (12%) of the amount due or fifty dollars ($50) per calendar day for each day in which any medical benefits owed remained unpaid, whichever is greater, but not to exceed two thousand dollars in the aggregate. La. R.S. 23:1201(F). Williams v. Hospital Service, Inc., 95-214 (La.App. 5 Cir. 9/20/95), 663 So.2d 749, 754.
LSA R.S. 23:1201(F) provides, in pertinent, part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim.
Accordingly, we amend the judgment of the hearing officer to increase the penalty award. We award penalties in the amount of $2,000.00 in accordance with La. R.S. 23:1201(F).

ATTORNEY FEES
In assignment of error number two, the claimant, Ms. Harrison urges that the Hearing officer erred in awarding her only $500 in attorney fees for substantial work performed by her attorney. Ms. Harrison further urges that her attorneys have expended a considerable amount of time on this case and that the egregious behavior of the defendant in arbitrarily and capriciously refusing to provide medical treatment to Ms. Harrison necessarily demanded a substantial amount of time by her attorneys in preparation for this case.
The defendant argues that the bulk of claimant's counsel time is attributable to the pursuit of claims for significant benefits, as well as the claim for payment of a higher compensation rate and that the hearing officer rejected these claims and the notion that claimant's counsel should be compensated for pursuing these claims. Therefore, the amounts of the respective awards for penalties and attorney fees should be upheld.
After thorough review of the record, we agree with the hearing officer's findings on the issue of attorney's fees. The trial court has wide discretion in assessing attorney's fees and its award will not be disturbed absent a showing of an abuse of discretion. Smith v. Tudor Const., 25,783 (La.App. 2d Cir.5/4/94), 637 So.2d 666; Kahlden v. Horseshoe Entertainment, 30,277 (La.App. 2d Cir.2/25/98), 709 So.2d 873. The hearing officer was in a better position to evaluate the degree of culpability of the employer and assess the appropriate attorney's fees under the circumstances presented. We find no abuse of discretion.
This assignment of error is without merit.

CALCULATING AVERAGE WEEKLY WAGE
In assignment of error number three, the claimant, Ms. Harrison urges that the hearing officer erred in calculating her average weekly wage by utilizing only the "other wages" formula, found in La. R.S. 23:1021(10)(d), rather than calculating the AWW in accordance with the part-time employee's criteria for the hourly wage portion of Ms. Harrison's earnings, and in accordance with the "other wages" provision for the "tip" portion of her earnings, contrary to the prevailing jurisprudence and treatise interpretation.
Louisiana jurisprudence has interpreted La. R.S. 23:1021 to provide that the AWW of an employee whose income is derived from both hourly wages and tips shall be calculated as follows: the hourly wage portion of the employee's earnings is calculated under § 1021(10)(a)(i) [hourly wages], then the "tip" portion of her earnings is calculated in accordance with § 1021(d) [other wages]. The *1008 two figures are added together to determine the claimant's AWW. Ms. Harrison's AWW totals $167.52, rather than appellee's figure of $141.87.
The defendant counters that Ms. Harrison testified that she earned an hourly wage of $2.13, plus tips, while working as a waitress for Frank & Janie's. This compensation arrangement allows Ms. Harrison's wages to be calculated under La. R.S. 23:1021(10)(d), which deals with the category of "other wages." This statute requires that "other wages" be calculated by considering the claimant's total earnings for the 26 weeks prior to the accident, divided by the number of days actually worked, multiplied by four.
La. R.S. 23:1021(10) provides, in pertinent part:
"Wages" means average weekly wage at the time of the accident. The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) If the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident;
(d) Other wages. If the employee is employed on a unit, piecework, commission, or other basis, his gross earnings from the employer for the twenty-six week period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said twenty-six week period and multiplied by four; however, if such an employee has worked for the employer for less than a twenty-six week period immediately preceding the accident, his gross earnings from the employer for the period immediately preceding the accident divided by the number of days the employee actually worked for the employer during said period and multiplied by four.
This court in Kahlden, supra concluded that the average weekly wage calculation methods represented by La. R.S. 1021(10)(a)(i) and (ii) is for employees with predominantly fixed hourly wage rates or stable hourly work weeks and that La. R.S. 1021(10)(d) is the proper method of calculation when the majority of the employee's earnings come from tokes or tips and not from the base hourly wage. The tokes or tips earned represent a variable wage factor. The variable nature of the wages from tokes or tips and the hours worked per pay period makes La. R.S. 1021(10)(d), with its consideration of a twenty-six week work period, the best method to calculate average wages.
Like Kahlden, in the instant case, Ms. Harrison's wages were derived from tips and her base hourly wage. The majority of Ms. Harrison's earnings came from tips and not her $2.13 base hourly wage. La. R.S. 1021(10)(d) is the calculation used by the hearing officer to compute the correct average weekly wage for Ms. Harrison. Based upon the facts, La. R.S. 1021(10)(d) is the proper method of calculation. We find no manifest error in the judgment in that regard.

SUPPLEMENTAL EARNINGS BENEFITS
In assignment of error number four, the claimant, Ms. Harrison urges that the hearing officer erred as a matter of law by concluding that Ms. Harrison was not entitled to supplemental earnings benefits (SEB). The hearing officer failed to consider Ms. Harrison's testimony concerning her inability to work and her inability to earn ninety percent of her pre-injury wages. Some disabled employees are able to perform some work, but are unable to earn at least ninety percent of their pre-injury wages while performing other work. Hurst v. Baker Sand Control, 94 2463 (La.App. 1 Cir. 10/6/95), 671 So.2d 408.
*1009 The fact that Ms. Harrison was able to work as a bartender, a job much less physically demanding than that of a waitress, does not preclude her from being awarded SEB. Where her wages as a bartender are less than ninety percent of her pre-injury wages as a waitress, she would be entitled to SEB. Ms. Harrison is entitled to SEB from September 21, 1995, until the date of her surgery, July 26, 1996.
However, the defendant argues that the fact that an employee has injured herself on the job does not automatically entitle her to disability benefits. Wokoma v. Hawk Pipe Service, Inc., 509 So.2d 665 (La.App. 3rd Cir.1987). Under Louisiana law, an employee is not entitled to supplemental earnings benefits if she is capable of earning 90 percent or more of the pre-injury wage in any employment or self-employment which she is physically capable of performing, and which was offered or tendered by the employer or any other employer or which is proven available to the employee in the employee's or employer's community or reasonable geographic region. La. R.S. 23:1221(3)(a); La. R.S. 23:1221(3)(c)(i).
"The purpose of SEBs is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident." Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993). An employee is entitled to receive supplemental earnings benefits (SEBs) if he sustains a work-related injury that results in his inability to earn ninety percent (90%) or more of his average pre-injury wage. La.Rev.Stat. Ann. 23:1221(3)(a) (West Supp.1997). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Freeman, 93-1530 at p. 7, 630 So.2d at 739. "Th[is] analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage." Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989).
Once the employee's burden is met, the burden shifts to the employer who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee or that the job was available to the employee in his or the employer's community or reasonable geographic region. La.Rev.Stat. Ann. 23:1221(3)(c)(i) (West Supp.1997); Daigle, 545 So.2d at 1009.
In the instant case, the hearing officer was called upon to make credibility determinations, reasonable evaluations of credibility and reasonable inferences of fact that should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La. 1989); Canter v. Koehring, 283 So.2d 716 (La.1973). The hearing officer was influenced by certain medical findings and conflicts in Ms. Harrison's testimony in concluding that Ms. Harrison was not entitled to supplemental earnings benefits. The hearing officer found that the claimant was offered a job as a hostess/waitress, that the claimant refused employment, and that the claimant's lack of income was due to her unwillingness to return to work and not due to her injury.
Following the accident, Ms. Harrison continued to work for both the defendant and 2 Rules II Lounge. The records of Dr. Brown and Ms. Harrison's own testimony confirm that she was capable of working from the date of her injury through mid-January 1995. Between November 17, 1995 and September 21, 1995, Ms. Harrison did not seek medical treatment. Ms. Harrison stopped working for the defendant in mid-January 1995 but continued working for 2 Rules II Lounge as a bartender. Dr. Brown's medical notes indicate that Ms. Harrison was employable in most occupations that did not require her to raise her arm above her head.
Ms. Harrison was offered employment with the defendant, Frank & Janie's, as a hostess/waitress two weeks before the trial. Despite this offer, Ms. Harrison admitted that she did not even attempt to return to *1010 her former employer. Ms. Harrison was reluctant to take the position. We find Ms. Harrison's apprehension in this matter unreasonable.
Based upon the hearing officer's findings and a review of the record, Ms. Harrison failed to satisfy her burden to prove that the work-related injury she sustained resulted in her inability to earn ninety percent (90%) or more of his average pre-injury wage. The evidence presented by Ms. Harrison falls short of satisfying her initial burden of proof. We conclude that the hearing officer was not manifestly erroneous or clearly wrong in finding that Ms. Harrison was not entitled to supplemental earnings benefits. There is ample basis to support the hearing officer's conclusion.
This assignment of error is without merit.

DECREE
For the reasons expressed, the decree of the hearing officer is amended to award $2,000 in penalties. In all aspects the decree is affirmed. Costs of the appeal are assessed equally between Ms. Lottie Harrison and Frank and Janie's Seafood Restaurant.
AMENDED IN PART AND AS AMENDED AFFIRMED.